Shelcy MULLINS, Administrator of the Estate of Teresa Rae Seals, an infant, Deceased, Plaintiff,

v.

Ruth Ann SEALS, Administratrix of the Estate of Charles Jackson Seals, Jr., Deceased, Defendant.

Civ. A. No. 750701–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

July 14, 1976.

---

Carl McAfee, Cline, McAfee, Adkins & Gillenwater, Norton, Va., for plaintiff.

S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is now before the court pursuant to defendant's motion for a new trial or alternatively, to require the plaintiff to accept a lesser amount in damages. Fed.R. Civ.P. 59. For the reasons which follow the court denies the motion.

Plaintiff, the Administrator of the estate of Teresa Rae Seals, sued the Administratrix of the estate of Charles Jackson Seals, Jr. under the Virginia Wrongful Death Act, Code of Virginia (1950), as amended § 8-

633 (1975 Supp.) with jurisdiction in this court based on diversity of citizenship, 28 U.S.C. § 1332. The jury found the defendant liable and awarded damages in the amount of $278,000 to be distributed as follows: $80,000 to Charles J. Seals, III, a brother of Teresa Rae Seals: $80,000 to John Seals, a brother of Teresa Rae Seals; $115,000 to Ruth Ann Seals, the mother of Teresa Rae Seals; and $3,000 in funeral expenses. The defendant's present motion is based solely on the court's admission of certain evidence relative to damages and the amount of the jury's award.

At trial Norman Leonard, a doctor of philosophy in economics, testified as an expert witness for the plaintiff. At the time of her death Teresa Seals was 14 years of age. Dr. Leonard testified that statistically a white female, fourteen years of age, has a life expectancy of 63.5 years and a worklife expectancy of 40 years. He further testified that the median annual earnings of white females in the southern United States with one to three years of college was $6,237, and with four years of college, was $8,403. Based on these figures Dr. Leonard calculated that the worklife earning capacity of such a hypothetical female ranged from $249,480 to $336,120 depending upon the number of years of college completed. Dr. Leonard also testified that these figures should be "corrected" upward to reflect increased productivity and inflation and downward to reflect the decrease in the value of money. He assigned a value of three per cent per annum for increased productivity and three per cent per annum for inflation.

Defendant challenges the admission into evidence of Dr. Leonard's testimony as being too speculative and not sufficiently relevant as compared with its prejudicial effect. The basis for admitting Dr. Leonard's testimony was § 8-636.1 of (Supp. 1975) the Code of Virginia (1950), as amended which sets forth the damages which may be awarded by a jury in a wrongful death suit. In pertinent part this statute provides:

"The verdict of the jury shall include, but may not be limited to, damages for

the following: . . . (b) compensation for reasonably expected loss of (i) income of the decedent; . . .."

Although Dr. Leonard's testimony was based on statistics without the benefit of an established pattern of earnings or contribution of income by the decedent to the surviving members of her family, the evidence did provide a factual basis for the jury to assess his testimony. The jury heard evidence that Teresa Rae Seals was an intelligent, fourteen year old child who was devoted to her family and particularly her youngest brother. Teresa was described as a "model child" who enjoyed reading, music and riding. The jury was also aware that Teresa's father was college educated and her mother was taking college courses at the time of her death.

There is no doubt that it is an uncertain fact as to whether Teresa would have earned any income in her projected working life; or, assuming she did, that she would have contributed to the surviving members of her family. However, the law of Virginia specifically makes the "reasonably expected loss of income of the decedent" an element which the jury "shall" include in its verdict, and this is without qualification as to the decedent's age. It is obvious that any evidence as to what a minor decedent would have earned or contributed would be somewhat speculative, but such difficulty of proof should not preclude the plaintiff from attempting as best he could to establish this statutory element of damages.

Federal Rule of Evidence 401 provides that,

'Relevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In light of the Virginia statute Dr. Leonard's testimony was clearly relevant, however defendant relies on Federal Rule of Evidence 403 which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The court was cognizant of the possibility that Dr. Leonard's testimony could prove to be prejudicial in the jury's assessment of damages, but felt that any possible prejudice could be cured by the instructions to the jury. The jury was instructed that Dr. Leonard's testimony was advisory and could be disregarded and that the jury should follow the dictates of its informed conscience. The court was also careful to word the instruction regarding damages based on the decedent's expected loss of income in terms of compensation "*to them*" (the decedent's survivors) for the reasonably expected loss of income of the decedent. In light of the instructions to the jury, the court did not, and does not now, believe that the probative value of Dr. Leonard's testimony was substantially outweighed by the danger of prejudice.

It should also be noted that under § 8-636.1 of the Virginia Wrongful Death Act damages are also awarded for "sorrow, mental anguish and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent", as well as "services, protection, care and assistance provided by the decedent". The jury was instructed that the purpose of the Virginia Wrongful Death Act is to compensate the family of the decedent, and it is impossible to say what part, if any, of the jury's damage award was based on Dr. Leonard's testimony.

The defendant has cited the case of *Riksen v. Hollister*, 523 P.2d 1361 (Idaho 1974) in support of its argument that evidence of decedent's future earnings should have been excluded. Although this case supports defendant's position, the court is not persuaded that its reasoning should apply to this case. The question of whether expert evidence of a minor's expected future earnings is admissible in a wrongful death suit has apparently not been addressed by the Virginia Supreme Court. However, in view of the mandatory and unqualified provision

of § 8–636.1 making expected future earnings an element of damages in wrongful death suits, the court believes that the statute would be construed by the Virginia Supreme Court so as to allow such evidence. In addition, to the extent that the admissibility of Dr. Leonard's testimony is governed by The Federal Rules of Evidence, his testimony is clearly admissible under Rule 401.

Defendant also objects to Dr. Leonard's testimony to the extent that his conclusions as to the decedent's expected earnings were corrected upward to account for inflation and increased productivity. The court is not persuaded that such testimony was improper. Dr. Leonard was subject to cross examination as to his opinion on these factors, and the jury was free to disregard any or all of his testimony. For the same reasons which led the court to admit Dr. Leonard's testimony, the court concludes that the scope of this testimony was within permissible limits.

Defendant also challenges the admission into evidence of the testimony of decedent's mother regarding the family's income in 1974. The court is of the opinion that this evidence had some probative value regarding the likelihood that the decedent would attend college and achieve a level of income comparable to that of her family.

Finally defendant contends that the jury's award of $278,000 was excessive as a matter of law. Although the verdict was undeniably large, the court cannot conclude that the amount was so shocking as to justify the court invading the province of the jury. The Virginia Wrongful Death Act no longer imposes limits on the damages which may be awarded and sets forth numerous intangible factors such as "sorrow, mental anguish and solace" which the jury shall include in its award of damages. Based on the court's assessment of the evidence presented at trial and language of the Virginia Wrongful Death Act, the court is of the opinion that the jury's verdict was not excessive as a matter of law.

Accordingly, for the reasons stated defendant's motion for a new trial or remittitur of the jury's damage award is denied. Judgment in accordance with the jury's verdict shall this day be entered.